UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA                          :

                                            : CASE NO. 1:23-cr-66 (RC)

        v.                                              :

                                            :

REBECCA LAVRENZ,                                  :

                                            :

          Defendant.                                   :

DEFENDANT LAVRENZ'S MOTION TO CHANGE VENUE TO THE DISTRICT OF COLORADO BASED ON NEWLY DISCOVERED POLLING EVIDENCE

     COMES NOW the Defendant Rebecca Lavrenz with this Motion to change venue to the U.S.

District of Colorado, based on newly discovered polling evidence.

I.     INTRODUCTION

         A recent nationwide opinion poll conducted jointly by USATODAY and Suffolk

University measured attitudes regarding the events of January 6, 2021.  The poll found that only

48% of voters overall said they thought the rioters were "criminals," "a significant drop

from the 70% of voters who thought so in a Suffolk survey conducted just weeks after the

attacks." https://www.suffolk.edu/-/media/suffolk/documents/academics/research-at-

suffolk/suprc/polls/national/2024/poll-release-jan-6-

anniversary.pdf?la=en&hash=1B465075D167E3C11A7D1224B025260702C50510 (accessed

2/17/2024).

        "Those who agreed that "they went too far, but they had a point" rose to 37% from 24%,

and 6% called their actions "appropriate," when in 2021 just 2% did."  This evidence shows that

the jury pool(s) available outside DC are overwhelmingly more fair to January 6 defendants than

the DC jury pool. Almost one-third of respondents (32%) said the legal actions against the

participants "were inappropriate and should be reversed." Id.

**These poll results from nationwide polling are in sharp contrast to polling of DC residents.**

A recent poll of DC residents, by contrast, shows attitudes and feelings by DC residents

view January 6 defendants ("J6ers") as worthy of life imprisonment or the death penalty. The

poll, conducted by the January 6th Legal Fund, is entitled  IRREFUTABLE POLLING DATA

SHOWS WASHINGTON DC JURORS ARE BIASED AGAINST JANUARY 6

DEFENDANTS !  See https://www.j6changeofvenue.com/ (accessed 2/17/2024).



A total of 48 percent of DC residents say that a penalty of life imprisonment or death "would be

a fair punishment for anyone who participated in any of the vents of January 6."



And a SUPERmajority of DC residents (68.8 percent!) say that "regardless of what they did, anyone who participated in the events at the Capitol on January 6 should serve prison time." Id.

The Methodology of this Triton Polling was Performed to the Highest Standards; Designed to pass the Heavy Scrutinization of Federal Prosecutors & Judges who will be Meticulously Dissecting the Results.The Poll was administered from January 4th to January 8th 2024, with over 420 Washington DC Residents participating. The margin of error is only +/- 4.8%.

68.3% of the polling was administered in Live Telephone Interviews and 31.7% was administered Text to Web.

The results prove, with immense factual data, an insurmountable bias from the Washington DC Residents against January 6 defendants. The only path for Justice for the January 6 political prisoners is to move the trials out of Washington DC now.

II.     THE POLLING DATA CARRIES PROBATIVE VALUE

It may be true that that "public opinion polling commissioned by one party is *often* less probative than a "recorded comprehensive voir dire examination conducted by the judge in the presence of all parties and their counsel." *United States v. Haldeman*, 559 F.2d 31, 64 (D.C. Cir. 1976) (Emphasis Added). However, this is the result when surveys have procedural and substantive defects. See *United States v. Brock*, 628 F. Supp. 3d 85, 96 (D.D.C. 2022) (Survey results were not reliable enough to merit a change in venue, as the questions used "impossibly broad language" and failed to offer more than two choices, either "guilty or not guilty.")

In *Brock,* the court found that the survey questions used impermissibly broad language. *Id.* Specifically, one of the questions asked, "Are you more likely to vote that [a January 6th defendant] is guilty or not guilty of [the] charges?" *Id.* The survey provided here does not ask a black and white guilty or not guilty question. The questions and language here are tailored to sentencing and punishment. It exposes bias from potential jurors without using impermissibly broad language.

Additionally, one of the issues with the survey provided in *Brock*, is that the answer selections were guilty or not guilty and failed to offer "an option to share that they had not yet formed an opinion as to the guilt of every January 6th defendant." *Id.* The same cannot be said with the poll offered here. There are seven different answer choices here and none are as extreme as guilty and not guilty. There was no middle ground in *Brock*, for an undecided individual, but here there is an option for those individuals not yet decided, "Neither agree or disagree."

Further, the survey results in *Brock* were mixed. *Id.* The results did not show that a majority of those polled would be more likely to find a January 6th defendant guilty. *Id.* Therefore, the poll did not conclude that trials would be impartial. *Id.* In contrary, the poll

offered here showed that of those polled, 51.3% strongly agreed that "Regardless of what they did, anyone who participated in the events at the Capitol on January 6 should serve prison time." An additional 17.4% somewhat agreed with this statement. In sharp contrast to *Brock,* the poll results show that a trial in this venue would be impartial.

**The government's 100 percent conviction rate in Jan. 6 cases belies the belief by a majority of Americans outside DC that the January 6 defendants are innocent, and/or being overprosecuted.**

Further, in three years of January 6 prosecutions, the government has achieved a one hundred percent jury conviction rate.  Although a handful of juries have acquitted on given counts, never has a jury fully acquitted any J6 defendant.  January 6 defendants have received the longest average sentences ever in American history for participating in a political demonstration.

It is obvious that other court jurisdictions would provide a more fair venue for Lavrenz' trial.

III.   CONCLUSION

The newly conducted polling is reliable enough to merit a change in venue. Unlike prior January 6 litigations that have motioned for a change in venue based on polling data, the results here highlight impartiality and bias in this court as it pertains to January 6 trials. The survey questions did not use impermissibly broad language. The answer choices were not restricted to two selections, guilty or not guilty. There were seven different answers that were surveyed. The questions administered asked specific questions on punishment and causation, not a broad premature question of guilty or not guilty to charges. For the foregoing reasons, Ms. Lavrenz will not receive a fair trial by an impartial jury if this case remains in the District of Columbia, and she seeks to have the case transferred to a more appropriate venue.

Dated: February 19, 2024

Respectfully Submitted,

*/s/ John M. Pierce*
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com

**CERTIFICATE OF SERVICE**

I, John M. Pierce, hereby certify that on this day, September 6, 2023, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

/s/ John M. Pierce
John M. Pierce