## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **Case No: 1:23-CR-66-ZMF** |
| | **:** | |
| **REBECCA LAVRENZ,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## UNITED STATES' MOTION *IN LIMINE* REGARDING
## CAPITOL RIOT VIDEO MONTAGE EVIDENCE

The United States of America moves for an order *in limine* to admit a video montage relating to the January 6, 2021 riot at the United States Capitol, pursuant to Fed. R. Evid. 401, 402, 901, and 1006.[1]

## BACKGROUND

The government intends to introduce evidence through a U.S. Capitol Police Captain familiar with the Capitol Police procedures leading up to January 6, 2021, including the security measures put in place and the video surveillance system underpinning that security. The Captain is also familiar with the approximately 1600 cameras present at the U.S. Capitol building and grounds. From the videos created by those cameras on January 6, 2021, the government has developed a comprehensive exhibit covering the events of the day.

---

[1] This motion is materially similar to the United States' motion *in limine* regarding video montage evidence filed in *United States v. Nancy Barron*, No. 22-cr-89-ZMF (D.D.C. Aug. 4, 2023), ECF No. 48, which went to trial before this Court in August 2023. That case involved a defendant charged with the same four misdemeanor counts that Ms. Lavrenz is charged with here. And, like Ms. Lavrenz, the defendant in *Barron* was present on the East Front of the U.S. Capitol on January 6 and entered the U.S. Capitol building through the Rotunda Doors. This Court granted the United States' motion to admit the same video montage that is the subject of this motion. *See* Minute Order, *United States v. Barron*, No. 22-cr-89-ZMF (D.D.C. Aug. 21, 2023) ("Government 48 Motion in Limine to Admit January 6 Montage as to NANCY BARRON, heard and granted.").

As the certification proceeding at the Capitol began, a large crowd gathered outside the U.S. Capitol. Officers with the United States Capitol Police and the Metropolitan Police Department attempted to keep the crowd away from the building, but the crowd broke through several barriers on the West Front just before 1:00 p.m. Another crowd gathered on the East Plaza of the building, encroaching on the area where the motorcade that brought then-Vice President Pence to the Capitol was parked. Shortly before 2:00 p.m., the crowd on the West Front broke into the scaffolding, which was set up to construct the inauguration stage. At 2:13 p.m., individuals in the crowd forced entry into the U.S. Capitol building itself on the West side near the Senate. In response to this intrusion, representatives, senators, and then-Vice President Pence evacuated their respective chambers around 2:20 p.m. For the next two hours, rioters flooded the building and the grounds, while police attempted to clear them out. The police finally cleared the Lower West Terrace of the Capitol at approximately 5:10 p.m.

The video montage intended to be introduced into evidence consists of videos taken from various closed-circuit television (CCTV) cameras controlled by the U.S. Capitol Police. *See, e.g.*, Figure 1.



*Figure 1: Screenshot from montage exhibit at 00:23*

It also includes satellite map depictions to orient the factfinder to the area of the U.S. Capitol and the general area with which the CCTV depictions are occurring. *See* Figure 2.



*Figure 2: Screenshot from montage exhibit at 00:37*

The depictions include the events at both the West and East Front of the Capitol, including a depiction of the Defendant herself. *See* Figure 3.



*Figure 3: Screenshot from montage exhibit at 01:37. The Defendant is circled in yellow.*

The montage also includes audio. The audio derives from recorded "radio runs" from the U.S. Capitol Police communication system. As an example, during the depiction located within *Figure 1*, the factfinder will hear a radio transmission that says: "priority. We just had protesters at Peace Circle breach the line! We need back-up." The entirety of the proposed exhibit will be provided to the Court prior to the pretrial conference.

The montage exhibit is 15 minutes, 30 seconds in length, and represents an admissible overview of what occurred on January 6, 2021.

## ARGUMENT

Trial courts have inherent authority to manage the course of trials. *See generally* Fed. R. Evid. 103(d), and Fed. R. Crim. Pro. 12. "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v United States*, 469 U.S. 38, 41 n.4 (1984). More

4

directly, rulings about the admissibility of evidence pre-trial "may generally be the better practice, for it permits counsel to make the necessary strategic determinations." *United States v Jackson*, 627 F.2d 1198, 1209 (D.C. Cir 1980).

### 1. Authenticity

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]" (citation and quotation marks omitted)). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the [finder of fact] to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases); *see also, e.g.*, *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacak*, 553 F.3d at 349 ("only a *prima facie* showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the [finder of fact]." *Vidacak*, 553 F.3d at 349; *see*

*also, e.g.*, *Belfast*, 611 F.3d at 819 ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

Under Fed. R. Evid. 901(4), "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" can provide "evidence sufficient to support a finding that the item is what the proponent claims it is." *Id*. Here, the montage provides an overall view of the events that occurred around the U.S. Capitol, through the U.S. Capitol Police's own systems.

The filming locations, and the timestamps on each depiction, provide distinct characteristics that establish these depictions are what the government claims them to be. Both the entirety of the video and the audio depicted within this montage, which form the basis of these depictions in summary form, have been provided to defense counsel. The montage exhibit is composed of authentic footage that is not in meaningful dispute.

## 2. Relevance

In *United States v Carpenter*, Chief Judge Boasberg explained that "general evidence of the events of January 6 is probative of several elements of the crimes with which [defendant] is charged." *United States v. Carpenter*, No. 21-cr-305, 2023 WL 1860978 at *3, (D.D.C. February 9, 2023). And, as the Court of Appeals for the D.C. Circuit explained recently, whether conduct was disorderly or disruptive requires a context-dependent inquiry that takes into consideration the surrounding circumstances. *See United States v. Alford*, 89 F.4th 943, 949–53 (D.C. Cir. 2024) (interpreting the terms "disorderly" and "disruptive" as they are used in 18 U.S.C § 1752 and 40 U.S.C. § 5104). Indeed, as the Court of Appeals explained, "entering the Capitol as part of a crowd rather than as a lone individual magnified the disruptiveness of [the defendant's] presence. Each additional person, no matter how modestly behaved, increased the chaos within the building, the

police's difficulty in restoring order and the likelihood of interference with the Congress's work." *Id.* at 953. Thus, "[t]he jury was not required to view [the defendant's] actions in isolation as though he were the only one at the Capitol that day." *Id.* The circumstances-dependent inquiry endorsed by the Court of Appeals in *Alford* makes the montage exhibit plainly relevant and helpful to the jury's understanding of the circumstances under which the Defendant committed the charged offenses.

In Count One, the Defendant is charged with, "knowingly enter[ing] and remain[ing] in a restricted building and grounds . . . *without lawful authority* to do so." Information, ECF No. 20 at 1 (emphasis added). The montage not only summarily depicts the events of the January 6, 2021 riot, but also shows the Defendant (alongside countless other rioters) moving past the lines that the police were attempting to form to prevent rioters from advancing further into the restricted area. *Accord Alford*, 89 F.4th at 953 (noting that the presence of other rioters was relevant context that the jury could consider). This is especially important in the context of the Defendant's conduct in this case, where not only did she enter a restricted area, but also knowingly remained, despite obvious signs indicating her lack of lawful authority.

In Count Two, the Defendant is charged with, "engag[ing] in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds . . . and . . . such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions." Information, ECF No. 20 at 2. The Defendant's conduct—as will be proven at trial—was disorderly or disruptive, and her conduct on top of the conduct of her fellow rioters did in fact impede and disrupt the orderly conduct of Government business and official functions. This not only includes a single proceeding of the Congress, but the overall function of the U.S. Capitol and the law enforcement agencies protecting it. *See Alford*, 89 F.4th at 953.

7

In Count Three, the Defendant is charged with, "willfully and knowingly engag[ing] in disorderly and disruptive conduct within the United States Capitol Grounds and in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress and either House of Congress." Information, ECF No. 20 at 2. Thus, like with Count Two, the montage exhibit is probative of the Defendant's disruptive and disorderly conduct. *See Alford*, 89 F.4th at 953.

In Count Four, the Defendant is charged with, "willfully and knowingly parad[ing], demonstrat[ing], and picket[ing] in any United States Capitol Building." Information, ECF No. 20 at 2. The Defendant's conduct—as will be proved at trial—shows that she joined others to parade, demonstrate, or picket *inside* the Capitol. But the government must also be able to show the actions of the other individuals in order to meet its burden and contextualize the Defendant's conduct *vis a vis* the mob itself. *Accord Alford*, 89 F.4th at 953.

Importantly, this montage exhibit helps appropriately consolidate an otherwise voluminous amount of information. Rather than seeking to introduce the entirety of relevant footage around the Capitol building and grounds, this video enables the government to introduce what would otherwise be a large, burdensome series of separately admissible exhibits. In other words, under Fed. R. Evid. 1006, the video represents an appropriate "summary . . . to provide the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in Court."

As Chief Judge Boasberg noted: "the weighty probative value of evidence that broadly depicts what happened on January 6 outweighs any potential prejudice or cumulativeness. The Court at this point thus sees no reason to exclude it." *Carpenter*, 2023 WL 1860978 at *4. That is true for cases involving Defendants whose offenses largely took place on the East Front,

just as it is true for defendants who were present on the West Front. *See* Minute Order, *United States v. Barron*, No. 22-cr-89-ZMF (D.D.C. Aug. 21, 2023) (granting the government's motion to admit this same video montage in another East Front case).

Upon information and belief, the government has used this montage—in one way or another—in virtually every January 6 prosecution that has gone to trial since inception. While this alone does not guarantee its entry, it highlights the necessity and lack of controversy of such admission. As such, we seek its admission here.

## **CONCLUSION**

For these reasons, the United States requests that this Court enter an order, as described above, allowing for the admission of the fifteen-and-a-half-minute montage of the January 6, 2021 riot at the defendant's trial.

For the United States:

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

/s/ *Terence A. Parker*
Terence A. Parker
Trial Attorney (Detailee)
U.S. Attorney's Office for the
District of Columbia
NY Bar No. 5775192
Email: Terence.Parker3@usdoj.gov
Phone: (202) 252-7859

/s/ *Brendan Ballou*
Brendan Ballou
Special Counsel (Detailee)
U.S. Attorney's Office for the
District of Columbia
Email: brendan.ballou-kelley@usdoj.gov
Phone: (202) 431-8493