**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **Case No: 1:23-CR-66-ZMF** |
| | **:** | |
| **REBECCA LAVRENZ,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**UNITED STATES' MOTION *IN LIMINE* REGARDING**
**CONGRESSIONAL PROCEEDING MONTAGE EVIDENCE**

The United States of America moves for an order *in limine* pursuant to Fed. R. Evid. 401, 402, 901, 902, and 1006 to admit a video montage relating to the Congressional Record on January 6, 2021, without an authenticating witness.[1]

**BACKGROUND**

In Count Two, the Defendant, Rebecca Lavrenz, is charged with violating 18 U.S.C. § 1752(a)(2), which makes it unlawful to "knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds, . . . when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions." To satisfy this "orderly conduct of Government business or

---

[1] This motion is materially similar to the United States' motion *in limine* regarding video montage evidence filed in *United States v. Nancy Barron*, No. 22-cr-89-ZMF (D.D.C. Aug. 4, 2023), ECF No. 49, which went to trial before this Court in August 2023. That case involved a defendant charged with the same four misdemeanor counts that Ms. Lavrenz is charged with here. And, like Ms. Lavrenz, the defendant in *Barron* was present on the East Front of the U.S. Capitol on January 6 and entered the U.S. Capitol building through the Rotunda Doors. This Court granted the United States' motion to admit the same video montage that is the subject of this motion. *See* Minute Order, *United States v. Barron*, No. 22-cr-89-ZMF (D.D.C. Aug. 21, 2023) ("Government 49 Motion in Limine to Admit Procedure Montage as to NANCY BARRON; heard and granted.").

official function" element, the government intends to show that there was *in fact* government business occurring on January 6, 2021.

In Count Three, the Defendant is charged with, "willfully and knowingly engag[ing] in disorderly and disruptive conduct within the United States Capitol Grounds and in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress and either House of Congress." Information, ECF No. 20 at 2. Thus, the government intends to prove that there was a joint session of Congress convened on January 6, 2021.

Accordingly, the government seeks admission of an approximately nine-and-a-half-minute video montage that compiles portions of the official Congressional Record with portions of official Congressional Media and depicts the Congressional activities in a way that illustrates government business was *in fact* occurring on January 6, 2021, and as a result of the mob that entered the building, was delayed and impeded. A complete copy of the congressional montage will be provided to the Court prior to the pretrial conference.

## ARGUMENT

Trial courts have inherent authority to manage the course of trials. *See generally* Fed. R. Evid. 103(d), and Fed. R. Crim. Pro. 12. "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v United States*, 469 U.S. 38, 41 n.4 (1984). More directly, rulings about the admissibility of evidence pre-trial "may generally be the better practice, for it permits counsel to make the necessary strategic determinations." *United States v Jackson*, 627 F.2d 1198, 1209 (D.C. Cir 1980).

The proposed congressional montage consists of video depictions of both houses of Congress, appearing next to portions of the Congressional Record, and is organized in a manner that provides a summary-timeline of the governmental business that was occurring on January 6, 2021. *See below.*



The congressional montage itself is self-authenticating. Pursuant to 44 U.S.C. § 903, "[t]he public proceedings of each House of Congress as reported by the Official Reporters, shall be printed in the Congressional Record, which shall be issued in daily form during each session and *shall be revised, printed, and bound promptly*, as directed by the Joint Committee on Printing, in permanent form, for distribution during and after the close of each session of Congress." (emphasis added). Under 44 U.S.C. § 906, copies of the bound version of the Congressional Record must then be supplied, "to each United States circuit and district judge . . . ." A public electronic copy of each daily edition is available at https://www.congress.gov. The Congressional Record is an official publication. Under Fed. R. Evid. 902, "[t]he following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: . . . (5) **Official Publications.** A book, pamphlet, or other

publication purporting to be issued by a public authority." (emphasis in original). As an official publication, the Congressional Record is self-authenticating.

Moreover, in conjunction with the official record, the videos are authentic. Each chamber of Congress establishes its own rules relating to broadcasting what occurs within the chamber. Rule V, of the Rules of the House of Representatives for the One Hundred Seventeenth Congress, provided: "(a) The Speaker shall administer, direct, and control a system for complete and unedited audio and visual broadcasting and recording of the floor proceedings of the House. The Speaker shall provide for the distribution of such broadcasts and recordings to news media, for the storage of audio and video recordings of the proceedings, and for the closed-captioning of the proceedings for hearing-impaired persons."

Under Senate Rule XXXIII, "The Committee [on Rules and Administration] shall make such regulations respecting the reporters' galleries of the Senate, . . . and of news or press associations for daily news dissemination through radio, television, wires, and cables, and similar media of transmission." Both chambers each limit the access of recordings of each respective gallery to these officially established broadcasts. This 'one-and-only-stop shop' of video depictions of the chambers make identifying videos from those chambers relatively straight-forward. One example of authentication is producing "evidence sufficient to support a finding that the item is what the proponent claims it to be," by its "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(a) and (b)(4).

Here, the video clips from each gallery are distinct. Both the House and the Senate are unique filming locations, and the individuals recorded within the clips are immediately identifiable as members of the House or Senate. Further, the content and substance along with

the individuals within the video clips match what has been recorded in the Congressional Record. These video depictions, taken together with all the circumstances, provide sufficient evidence to support a finding that the item is what the proponent claims it is. It is thus authentic.

All in all, this exhibit helps appropriately consolidate an otherwise voluminous record. Rather than introducing ninety-one pages of the congressional record, along with more than fifteen hours of relevant footage from both chambers of what happened on January 6, 2021, this video enables the government to introduce what would otherwise be a large, burdensome series of exhibits. In other words, under Fed. R. Evid. 1006, the video represents an appropriate "summary . . . to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in Court."

Here, Count Two requires the government to prove that government business or an official function was ongoing and then disrupted. Along the same lines, Count Three requires the government to prove the joint session of Congress on January 6, 2021. Since relevant evidence is evidence that tends to make a fact more or less probable, evidence of the actual proceedings occurring in both houses of Congress, coupled with overall evidence of the riot that consumed the building (and thus disrupted the business of Congress and the U.S. Capitol Police) makes the likelihood of the Defendant's participation in the crimes she is charged with more probable.

## CONCLUSION

For these reasons, the United States requests that this Court enter an order, as described above, allowing for the admission of the nine-and-a-half-minute montage of the Congressional Proceedings at the Defendant's trial.

For the United States:

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

/s/ *Terence A. Parker*
Terence A. Parker
Trial Attorney (Detailee)
U.S. Attorney's Office for the
District of Columbia
NY Bar No. 5775192
Email: Terence.Parker3@usdoj.gov
Phone: (202) 252-7859

/s/ *Brendan Ballou*
Brendan Ballou
Special Counsel (Detailee)
U.S. Attorney's Office for the
District of Columbia
Email: brendan.ballou-kelley@usdoj.gov
Phone: (202) 431-8493