UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:23-CR-66-ZMF |
| : | |
| REBECCA LAVRENZ, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS**

The United States of America opposes Rebecca Lavrenz's motion to dismiss the information in this case. ECF No. 42. Lavrenz argues that her conduct was protected by the First Amendment. *Id.* at 1. The defendant's claims are not new. Similar motions have been filed in many Capitol Breach cases. To the government's knowledge, all have failed, while the United States has successfully precluded defenses based on the First Amendment. *See United States v. Easterday*, No. 22-cr-404 (JEB), 2023 WL 6646384 at *4 (D.D.C. Oct. 12, 2023) (granting government motion in limine seeking to exclude arguments that restrictions at the Capitol violated the First Amendment); *United States v. Sheppard*, 21-cr-203 (JDB), 2022 WL 17978837 at *5 (D.D.C. Dec. 28, 2022) (denying motion to dismiss on First Amendment grounds); *United States v. Bru*, No. 21-cr-352 (JEB), 2023 WL 4174293 at *3 (D.D.C. June 26, 2023) (granting government motion in limine seeking to exclude arguments that restrictions at the Capitol violated the First Amendment); *United States v. Munchel*, No. 21-cr-118 (RCL), 2023 WL 2992689 at *6-8 (D.D.C. Apr. 18, 2023) *United States v. Baez,* No. 21-cr-507 (PLF), 2023 WL 3846169 (D.D.C. June 2, 2023) (denying motion to dismiss); *United States v. Gray*, 652 F. Supp. 3d 112 (D.D.C. 2023) (denying motion to dismiss); Minute Order, *United States v. Kastner*, 21-CR-725 (MAU) (July 21, 2023) (denying motion to dismiss); *see also United States v Zink*, No. 21-cr-191 (JEB),

2024 WL 111772 at *4 (D.D.C. Jan. 10, 2024) (rejecting First Amendment challenge in the context of a motion for a new trial). Just as in those cases, the claims are meritless in this one and should be denied.

I. **LEGAL STANDARD**

"To prevail on an as-applied First Amendment challenge," a defendant "must demonstrate that the statute is unconstitutional as applied to his particular expressive activity." *United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016). The Court must "first assess whether [the defendant's] conduct is, in fact, expressive, and then determine whether the challenged statute 'is related to the suppression of free expression." *Id.* (*citing Texas v. Johnson*, 491 U.S. 397, 403, (1989)).

If the statute is not related to expression, then the less stringent standard the Supreme Court announced in *United States v. O'Brien*, 391 U.S. 367, 377 (1968)), for regulation of noncommunicative conduct controls. *Caputo*, 201 F. Supp. 3d, at 71. That test has four prongs: first, the challenged regulation must be "within the constitutional power of government"; second, it must "further[] an important or substantial government interest"; third, this interest must be "unrelated to the suppression of free expression"; and fourth, the incidental restriction on First Amendment freedoms must be "no greater than is essential to the furtherance of that interest." *Id.* (*citing O'Brien*, 391 U.S., at 377).

II. **ARGUMENT**

A. **The Charging Statutes Do Not Relate To Expression**

The statutes under which the defendant has been charged do not relate to the suppression of free expression.

As reflected in their statutory texts, two charges on the information carry specific-intent elements, which indicate that they are meant to prohibit actions, not mere expressions. Under 18

U.S.C. § 1752(a)(2), the government must show that the defendant acted "with intent to impede or disrupt the orderly conduct of Government business or official functions."  Similarly, under 40 U.S.C. § 5104(e)(2)(D), the government must show that the defendant acted with "the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress."  As Judge Kelly has previously observed, conduct done with the "inten[t] to obstruct Congress's performance of its constitutional duties . . . is simply not protected by the First Amendment."  *United States v. Nordean*, 579 F. Supp. 3d 28, 53 (D.D.C. 2021);  *see also Baez*, 2023 WL 3846169 at *9-22 (denying motion to dismiss and upholding 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G) under facial First Amendment challenges); *Gray,* 652 F. Supp. 3d at 129-132 (denying motion to dismiss and holding Section 5104(e)(2)(G) is not unconstitutionally overbroad); *United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000) ("Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message."); *see generally United States v. Giampietro*, 475 F. Supp. 3d 779, 792 (M.D. Tenn. 2020) (rejecting First Amendment challenge to 18 U.S.C. § 1519; the statute "regulates conduct, not speech, and the conduct it regulates – destruction of documents with the intent to obstruct a federal investigation – is not expressive") (cleaned up); *Gregory v. City of Chicago*, 394 U.S. 111, 118, (1969) (Black, J., concurring) ("Plainly, however, no mandate in our Constitution leaves States and governmental units powerless to pass laws to protect the public from the kind of boisterous and threatening conduct that disturbs the tranquility of spots … for public and other buildings that require peace and quiet to carry out their functions, such as courts, libraries, schools, and hospitals.").

With respect to 18 U.S.C. § 1752(a)(1), Judge Cooper concluded in *Caputo* that the act of entering White House property might carry an expressive component.  *See* 201 F. Supp. 3d at 71.

So too here, the defendant's act of unlawfully entering the Capitol's restricted area could be "communicative in nature." *Id.* But even accepting that "th[is] charged conduct had some expressive aspect, it lost whatever First Amendment protection it may have had" when the crowd turned violent. *Nordean*, 579 F. Supp. 3d at 53 (D.D.C. 2021); *see also Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment."); *United States v. Bingert*, 605 F. Supp. 3d 111, 130-131(D.D.C. May 25, 2022) (rejecting First Amendment challenge to Section 1752(a)(1) charge on this basis). Similarly, and contrary to the defendant's argument, the First Amendment does not allow a "group of demonstrators" to "insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations." *United States v. Nordean*, 579 F. Supp. 3d 2 at 53 (D.D.C. 2021) (quoting *Cox v. Louisiana*, 379 U.S. 536, 555 (1965)).

The same analysis applies to the final charging statute, 40 U.S.C. § 5104(e)(2)(G), which prohibits knowing and willful demonstrating, parading, and picketing in a Capitol building. Moreover, that statute already survived constitutional attack more than 20 years ago, when Judge Friedman recognized that "the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their concerns to their legislators. There are rules that members of Congress must follow, as well as rules for their constituents." *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 55 (D.D.C. 2000). The defendant, despite including a footnote that is more than a page long in which she reiterates the central issues with a now defunct statute that Judge Friedman outlined in *Bynum*, offers no compelling reason to deviate from that sensible conclusion.

### B. The Charging Statutes Are Appropriately Narrow

Because the charging statutes do not suppress mere expression, the less stringent standard announced in *O'Brien* applies in evaluating their constitutionality. *See, e.g., Johnson*, 491 U.S. at 403 (1989), *citing O'Brien*, 391 U.S. at 377 (1968). Under that (or any) standard, they survive.

*First*, the four violations of law charged here are "within the constitutional power of the government." *O'Brien*, 391 U.S. at 377. The defendant cannot plausibly contest the government's right, in certain circumstances, to prohibit trespass and disorderly conduct on government property or restricted grounds.

*Second*, "when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376 (cleaned up). As Judge Kelly has noted, "[t]he Government has a weighty interest in protecting Congress's ability to function without 'corrupt' interference." *Nordean*, 579 F. Supp. 3d at 53 (D.D.C. 2021); *see also Caputo*, 201 F. Supp. 3d at 72 (noting "the Government's profound interest in protecting the White House complex, the President, and the functionality of the executive branch"). That interest reached its apex on January 6 when "Congress was convened in Joint Session to undertake one of its most solemn and constitutional duties." *Nordean*, 579 F. Supp. 3d at 53 (D.D.C. 2021).

*Third*, that interest is "unrelated to the suppression of free expression." *O'Brien*, 391 U.S. at 377. None of the crimes for which the defendant has been charged turn on the content of her potentially expressive actions. Rather, the charged statutes ensure the protection and normal functioning of the Congress. *See United States v. Rhine*, 652 F. Supp. 3d 38 (D.D.C. Jan. 24, 2023); *Baez,* 2023 WL 3846169 at *9-22, *Gray,* 652 F. Supp. 3d 112 at 129-132.

*Fourth*, applying the charged statutes to the defendant's conduct imposes no more than an "incidental limitation[] on First Amendment freedoms." *O'Brien*, 391 U.S., at 376. As explained

above, the statutes the defendant is charged with predominately (if not exclusively) regulate unprotected activities. The statutes "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "Quite obviously, there were many avenues for [the defendant] to express [her] opinions about the 2020 presidential election, or [her] views about how Congress should perform its constitutional duties on January 6." *Nordean*, 579 F. Supp. 3d, at 54 (D.D.C. 2021), but none of them involved breaching the Capitol Building.

### C. The Challenged Statutes Permissibly Limit Access To The Capitol

The defendant trespassed onto the Capitol grounds and into the building itself. She now appears to argue that the challenged statutes impermissibly limited her access to the Capitol, claiming that "[a] long line of cases hold that people have a right to use the Capitol Grounds as a free speech forum." ECF No. 66 at 5.

But the Supreme Court has been consistent in holding that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981). Government buildings are restricted all the time: some are closed to the public entirely, some are closed outside of business hours, and some are open, but under certain restrictions (only members of the public with appointments may enter, for instance, or only those who pass a security screening).

To determine whether a property restriction violates the First Amendment, one must first determine whether the property is a public forum—one that "has traditionally been available for public expression"; or a designated public forum—one that the government "has opened for expressive activity by part or all of the public." *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992). Restrictions on both public and designated public forums are evaluated using a strict scrutiny standard. *Id.* By contrast a nonpublic forum is "a space that is not by

6

tradition or designation a forum for public communication." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). Restrictions on nonpublic forums must simply be "reasonable" and "not an effort to suppress expression." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). Nonpublic forums include airport terminals, *Int'l Soc'y for Krishna Consciousness*, 505 U.S. at 683, and polling places on election day, *Minn. Voters All.*, 138 S. Ct. at 1886.

Crucially, multiple courts have concluded that unlike the Capitol grounds, the interior of the United States Capitol, which the defendant breached, is a nonpublic forum. *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000) (Friedman, J.); *see also United States v. Easterday*, 2023 WL 6646384 at *4; *Sheppard*, 2022 WL 17978837 at *5; *United States v. Munchel*, No. 21-cr-118 (RCL), 2023 WL 2992689 (D.D.C. 2023); *United States v. Nassif*, 628 F. Supp. 3d 169, 177 (D.D.C. 2022); *Rhine*, 652 F. Supp. 3d at 63-65; *Gray*, 652 F. Supp. 3d at 131.

As discussed above, a nonpublic forum is one to which the government does not "grant general access." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 803, 105 S. Ct. 3439, 3449, 87 L. Ed. 2d 567 (1985). The Capitol is a federal workplace—perhaps the most famous in the country—and the Supreme Court has observed that the "Government has the right to exercise control over access to the federal workplace in order to avoid interruptions to the performance of the duties of its employees." *Cornelius*, 473 U.S. at 806. As such, the government has a "legitimate interest in ensuring that the activities of Congress proceed without disruption." *Bynum*, 93 F. Supp. 2d at 56. The court in *Bynum* explained that:

> "[T]he Capitol [does not] seem to fit the classification of a designated public forum. Unlike those locations that have been found to be designated public fora because they are open to the public for meetings or other group-related expressive activity, the inside of the Capitol is not open to meetings by the public at large. . . . Of course, meetings do take place in the Capitol, but they are scheduled and controlled by Senators or Representatives, and they may or may not be open to observation or

7

> (less frequently) participation by the public. . . . The fact that Congress allows the public to observe its proceedings and visit the inside of the Capitol does not make the Capitol a designated public form.

*Id.* The court in *Bynum* went on to conclude that 40 U.S.C. § 5104(e)(2)(G)—one of the statutes under which the defendant is charged—is viewpoint neutral and a reasonable regulation of a nonpublic forum, that is, the Capitol. *Bynum*, 93 F. Supp. 2d at 58. At least two other courts in this district have concurred with the court's analysis in *Bynum*. *See Nassif*, 21-CR-421 (JDB), ECF No. 42, at 3-11 (Bates, J.) (denying defendant's motion to dismiss 40 U.S.C. § 5104(e)(2)(G) count on First Amendment grounds); *United States v. Seitz*, 21-CR-279 (DLF), ECF No. 51 (Friedrich, J.) (same).

The same analysis applies to 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. § 5104(e)(2)(D). 18 U.S.C. § 1752(a) prohibits certain conduct inside a restricted area—restricted given the presence of a United States Secret Service protectee—without lawful authority. For reasons like those discussed above and in *Bynum*, the government is within its rights to maintain restricted areas as nonpublic fora. Moreover, neither Section 1752(a)(1) nor Section 1752(a)(2) target speech: the former is a trespass prohibition, while the latter covers disorderly and disruptive conduct. Similarly, Section 5104(e)(2)(D) as charged here covers only disorderly and disruptive conduct in the nonpublic Capitol building.

Generally, the defendant seems to be asserting that any closure of the Capitol grounds at any time is unlawful. However, the cases that she cites do not stand for the propositions that she contends. The defendant's reliance on *Adderley v. Florida*, 385 U.S. 39 (1966), is misplaced. In *Adderley*, the Court did remark that protesting at a state capitol is different in character from protesting at a jail because "[t]raditionally, state capitol grounds are open to the public." *Id.* at 41. The context in which the Court made this observation, though, is important. In asserting that "traditionally capitols grounds are open to the public," the Court was extrapolating upon its

8

decision in *Edwards v. South Carolina*, 372 U.S. 229 (1963). In that case, the Court struck down a statute that was "so broad and all-embracing as to jeopardize speech, press, assembly, and petition[.]" *Id.* at 42 (citing *Edwards*, 372 U.S. at 237). It was this same doctrine of overbreadth, the *Adderley* Court noted, that rendered Louisiana's breach-of-the-peace statute unconstitutional. *Id.* (citing *Cox v. Louisiana*, 379 U.S. 536, 551-552 (1965)). The Court's statement about capitols being traditional public fora was not, as the defendant suggests, a holding that *any* regulation that limits First Amendment activities on any capitol ground *ever* is unconstitutional. It was, instead, a truism that supported the holding from *Edwards* that a statute or regulation that was so overbroad and all-embracing such that it prohibited, in effect, *any* First Amendment activity on capitol grounds at *any* time is unconstitutional. *Adderley*, 385 U.S. at 42.

The defendant's citation to *Community for Creative Non-Violence v. Kerrigan*, 865 F.2d 382 (1989), is also misplaced. In that case, the plaintiffs challenged a Capitol Police regulation that prohibited permits to protest being issued for more than seven consecutive days or for more than twenty-four consecutive hours. The defendant asserts that the holding of *Kerrigan* is that "there is no doubt that the Capitol Grounds are a public forum." ECF 42 at 5. That is not the holding of *Kerrigan*. The holding there was that the Capitol Police regulation at issue there was "narrowly tailored to meet the significant governmental interest in maintaining control over Capitol Grounds." *Kerrigan*, 865 F.2d at 391. This holding is consistent with the holding in *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp 575 (1972), another case upon which the defendant relies.[1] In that case, a special panel of the District Court for the District of

---

[1] The Defendant asserts that *Jeanette Rankin Brigade* held that "Capitol Grounds are 'an area to which access cannot be denied broadly or absolutely.'" ECF 42 at 5. This is not the holding of *Jeanette Rankin Brigade*. It is a quote to *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308 (1967), which appears within *Jeanette Rankin Brigade*.

Columbia did strike down a Capitol Police regulation that prohibited protesting but, in doing so, observed that the 90-year-old statute at issue functioned as "a blanket prohibition of all assemblies, no matter how peaceful and orderly, anywhere on the Capitol Grounds" and was "flatly prohibitory." *Id.* at 585-586.

The defendant's assertions of law are unfounded. The government has a significant interest "in maintaining control over Capitol Grounds." *Kerrigan*, 865 F.2d at 391. The government may exclude from the Capitol "any group which is noisy, violent, armed, or disorderly in behavior, any group which has a purpose to interfere with the processes of Congress, any member of Congress, congressional employee, visitor or tourist; and any group which damages any part of the building, shrubbery, or plant life." *Jeanette Rankin Brigade*, 342 F. Supp at 580. To address the ongoing COVID-19 pandemic, and to prepare for the coming presidential inauguration, the government limited access to the Capitol and surrounding area, and did so in such a way that anyone who wished to protest the proceedings inside of the Capitol could still do so within sight and earshot of the building. The closed area was marked with fences around the Capitol's restricted perimeter, along with an increasingly heavy police presence guarding the building. The defendant's knowledge of these fences and police is a matter of fact to be decided by the factfinder. This limited closure was not so overbroad that it prohibited all First Amendment at any time in the vicinity of the Capitol. *Adderley*, 385 U.S. at 42 (citing *Edwards*, 385 U.S. 39); *see also* ECF 82 at 5-6. Therefore, the closure of the Capitol Grounds on January 6, 2021, does not violate the First Amendment.

**III.     CONCLUSION**

The statutes under which the defendant is charged are not related to expressive conduct, are not overly broad, and appropriately applied to the Capitol building.  For these reasons, the government respectfully requests that the Court deny the Defendant's motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ Brendan Ballou
Brendan Ballou
Special Counsel
DC Bar No. 241592
U.S. Attorney's Office for the
District of Columbia
Email: brendan.ballou-kelley@usdoj.gov
Phone: (202) 431-8493

Terence A. Parker
Trial Attorney
U.S. Attorney's Office for the
District of Columbia
NY Bar No. 5775192
Email: Terence.Parker3@usdoj.gov
Phone: (202) 252-7859