UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
  *Plaintiff*,

v.             1:23CR00066-001
               Zia M. Faruqui,
               United States Magistrate Judge

Rebecca Lavrenz,
  *Defendant*.

## DEFENDANT'S RESPONSE TO COURTS ORDER FOR AN ACCOUNTING OF FUNDS

Defendant Rebecca Lavrenz ("Lavrenz"), through her undersigned counsel, hereby responds to this Court's Order, dated July 15, 2024, for an Accounting of funds raised for her legal defense.

### Background.

Since her involvement in the January 6 incident, Lavrenz created a fundraising site online. In addition, the National Constitutional Law Union (the "NCLU") set up a fundraising site relating directly to her case. These accounts are 100%, or nearly 100%, dedicated to Lavrenz's legal defense, appeals, and related costs, and thus are protected by the 6th amendment right to counsel, to confront accusers, to put on a defense, her 5th amendment right to due process, and her 8th amendment right to be free from excessive fines.

**Lavrenz is not "profiting from crime."**

Unlike many January 6 defendants, Lavrenz went to trial and continues to insist on her innocence. Lavrenz's costs of defending herself are already well over six figures, and Lavrenz intends to appeal her wrongful convictions in this matter. Lavrenz's appeal costs will certainly require additional tens if not hundreds of thousands of dollars over the next year or more. Due process as well as the 1st, 6th and 8th amendments require that Lavrenz's legal defense funds not be seized as a "fine" by the District Court.

**Lavrenz insists on her innocence; and requiring that Lavrenz "show remorse" or be punished to the max violates Lavrenz constitutional rights.**

Moreover, due process requires that Lavrenz not be unduly punished for 'failing to show remorse' regarding convictions which Lavrenz is appealing and over which Lavrenz insists on her innocence. *Dinkines v. State*, ___ So.3d___, 38 FLW D2050 (Fla. 4th DCA September 25, 2013) (reversing prison sentence where lack of remorse was used as an aggravating sentencing factor). There, the court held, "[T]he trial court clearly took Dinkines' perceived lack of sincere remorse into consideration. This constitutes reversible error." The appellate court noted that remorse can be a consideration in determining whether to mitigate an individual's sentence under the state sentencing guidelines. However, it does not have the authority to use lack of remorse to enhance a sentence because such consideration would violate the person's constitutional right to due process.

Attached to this filing is a tally and accounting of Lavrenz's legal bills and costs of presenting her defense. Lavrenz spent over six figures on attorneys, travel to and from meetings with attorneys, lodging in D.C. during her trial, and travel expenses for herself and several witnesses.

Thus, although Lavrenz has raised significant funds for her legal defense, the majority of these funds have already been spent or are allocated for Lavrenz's defense. And Lavrenz's appeals in this matter will almost certainly take the remainder of the funds.

**There is no law requiring a defendant to provide <u>any</u> information to Probation for the drafting of pre-sentence reports.**

Curiously, there has developed a culture within the federal courts of the Probation Office conducting hour-long pre-sentencing interviews of convicted defendants wherein Probation officers ask extremely personal and unnecessary questions designed to humiliate defendants by making defendants practically lay naked before the federal courts. Questions include such things as whether a defendant's grandparents had a happy marriage, whether a defendant has a Netflix account, what medical conditions did the defendant's grandmother have, or what their siblings do for a living, and so forth.

*None of this is authorized by any federal law*. In fact, defendants who insist on their innocence *have a constitutional right* to refuse to answer such invasive

questions. Yet some courts appear to hold a defendant's justifiable reluctance to disclose personal information to Probation officers against the defendant.

CONSTITUTIONAL IMPLICATIONS OF THE GOVERNMENT'S ATTEMPTED SEIZURE OF LAVRENZ LEGAL DEFENSE FUNDS

The government quite casually proposes a notion that the District Court should seize a defendant's legal defense funds as a "fine," merely because people have donated to the defendant's defense. Yet such a "fine" would impinge on the constitutional right of Lavrenz (and every future criminal defendant) to speak out,[1] to a fair trial, to defend herself, and to confront accusers. Further it would *punish the public*, who have a right under the public trial clause to follow court proceedings and contribute funds to prevent injustice. Beyond this such a "fine" would fundamentally chill the right of Americans to dissent against the government.

**Lavrenz is challenging her conviction and will be appealing. Punishing Lavrenz with a maximum punishment for failing to be "remorseful" would violate due process.**

Embedded in the government's motion is an assertion that Lavrenz must show remorse or be punished to the max. But Lavrenz will be appealing her conviction, on good faith grounds. The Constitutional guarantee of due process

---

[1] The Supreme Court has held that the solicitation of charitable contributions is protected speech. *See Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781 (1988).

and the prohibition of cruel and unusual punishment prohibit such an unjust imposition of cruelty upon a defendant who protests her prosecution.[2]

**The federal courts need feedback not just from the executive branch of the U.S. government; but from the American people.**

Imbedded in the government's efforts to "fine" Lavrenz for defending herself is a notion that the government's framing of its narrative must prevail as the narrative of the District Court.  But the fact that many Americans have donated to Lavrenz defense should inform the Court that not every American views Lavrenz's prosecution the way the Biden Justice Department does.

A Suffolk University poll shows only 48 percent of voters believe January 6 rioters were "criminals."  Almost a third of Americans (32%) said the Justice Department's legal actions against the participants *are inappropriate and should be reversed*.  https://www.suffolk.edu/-/media/suffolk/documents/academics/research-at-suffolk/suprc/polls/national/2024/poll-release-jan-6-anniversary.pdf?la=en Many other polls also show that millions of Americans believe January 6 defendants are being over prosecuted and over punished.

**January 6 sentences are the harshest sentences in American history associated with political demonstrating.**

---

[2] Carissa Byrne Hessick & F. Andrew Hessick, Recognizing Constitutional Rights at Sentencing, 99 CALIF. LAW REV. 47, 67 (2011).

And these polls reflect reality. Jail sentences for January 6 defendants are the longest sentences in American history relating to any political rioting. In fact the longest January 6 sentences are more than double what law schools used to teach were the most unjustly long prison sentences in history relating to political dissent and demonstration. C.f., Peter Richardson, "Democracy's Prisoner: Eugene V. Debs, the Great War, and the Right to Dissent' by Ernest Freeberg," *LA Times*, June 15, 2008 (saying Eugene V. Debs' "10-year sentence raised 1st Amendment issues with unprecedented force").

The January 6 prosecutions have left the U.S. District of D.C. with some of the most authoritarian precedents regarding the crushing of dissent, among all federal circuits. Federal prosecutors have succeeded in framing the J6 political demonstrations as "an attack" on the Capitol, or upon Congress; an idea that every federal judge in the District seems to have accepted without any challenge.

By framing the demonstration of dissent on January 6 as an "attack," the District Court has essentially overturned the Supreme Court's assessment in *Adderley v. Florida*, 385 U.S. 39 (1966) that the First Amendment can be a defense to trespassing charges at a "legislative capitol."

In *Adderly*, the Supreme Court upheld (by split decision) trespassing convictions for political protestors at the grounds of a jail. But the Court was

<u>unanimous</u> that the First Amendment would be a defense to trespassing if the trespass had occurred at a "legislative capitol."

Date: Aug. 8, 2024                              Respectfully Submitted,

*/s/ John M. Pierce*
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (662) 665-1061
Email: jpierce@johnpiercelaw.com

*/s/ Roger I. Roots*
Roger I. Roots
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (775) 764-9347
Email: jpierce@johnpiercelaw.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, John M. Pierce, hereby certify that on this day, Aug. 8, 2024, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

*/s/ John M. Pierce*

## Rebecca Lavrenz Accounting Funds

GiveSendGo NCLU: **$67,711**

GiveSendGo Lavrenz: **$163,069**

Total Raised: **$230,780**

Legal Fees to Date: **$120,564.20**

Rebecca Travel and Hotel Expenses for duration of Trial and anticipated expenses for Sentencing: **$9000.00**

Retainer for Appeal: **$95,000.00**

Surplus Funds: **$6215.80**